MARK B. FREDKIN, ESQ. (SBN 53550)
WILLIAM SIAMAS, ESQ. (SBN 133111)
ELIZABETH M. PAPPY, ESQ. (SBN 157069)
MORGAN, FRANICH, FREDKIN & MARSH
99 Almaden Boulevard, Suite 1000
San Jose, California  95113-1613
Telephone: (408) 288-8288
Facsimile:  (408) 288-8325

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTINEZ, ET AL.,<br><br>Plaintiffs,<br><br>vs.<br><br>ANTIQUE & SALVAGE LIQUIDATORS, INC., ET AL.,<br><br>Defendants. | Case No. C09-00997 HRL<br><br>Date:  January  25, 2011<br>Time:  10:00 a.m.<br>Dept.: 2<br>Judge: Hon. Howard L. Lloyd<br>Trial:  March 14, 2011 |

## NOTICE OF MOTION AND MOTION:

### FOR SUMMARY JUDGMENT, OR, ALTERNATIVELY,

### PARTIAL SUMMARY JUDGMENT

### BY DEFENDANTS AMI SOUTHERN CALIFORNIA, INC., AMERICAN METAL & IRON, INC., BIG H. ENTERPRISES, INC., HOWARD MISLE AND DIMOND METALS, INC.;

### AND

### FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANT ANTIQUE & SALVAGE LIQUIDATORS, INC.

# **TABLE OF CONTENTS**

Page

NOTICE OF MOTION ...........................................................................................1

INTRODUCTION ................................................................................................1

STATEMENT OF THE CASE...............................................................................2

I.      Allegations Of The Second Amended Complaint ....................................2

II.     Statement of the Relevant Facts ............................................................3

        A.      The Business Of ASL ...................................................................3

        B.      The Ownership and Management Of ASL ......................................3

        C.      Other Corporate Defendants ........................................................4

        D.      Plaintiffs....................................................................................5

ARGUMENT .....................................................................................................6

I.      Defendants  Misle, AMI Southern California, Inc., American Metal & Iron, Inc., Big H Enterprises, Inc., and Dimond Metals, Inc. Are Entitled To Summary Judgment On The SAC, Or Summary Adjudication As To Each Claim.................................................................................................6

        A. The Defendants Other Than ASL Are Entitled To Summary Adjudication On The 1st And 3rd Through 6th Causes Of Action Because They Did Not "Employ" Plaintiffs Within The Meaning Of California Law ..................................................6

        B.      The Defendants Other Than ASL Are Entitled To Summary Adjudication On the 2d Cause of Action For Allegedly Unpaid Overtime Under The FLSA ...........................................................8

                1.      The Defendants Other Than ASL Were Not Plaintiffs' Employers As Defined Under The FLSA ..........................9

                2.      Plaintiffs Were Paid The Correct Amount Of Overtime After August 2007, When Prime Pay Was In Charge Of Tracking Employee Hours And Determining Their Compensation ...............11

                3.      The Statute of Limitations Has Expired As To The FLSA Claims On The Claims Which Pre Date August 2007 .....................11

        C.      The 7th Claim Is Time Barred .....................................................12

II.     ASL Is Entitled To Summary Adjudication On The Seventh Claim .....................14

III.    Each Defendant Is Entitled To Partial Summary Judgment ....................................3

A.   Defendants Paid The Correct Amount Of Overtime To Each Plaintiff For Each Pay Period From August 2007 To December 18, 2008 ............... 15

B.   Defendants Provided Rest And Meal Breaks To Each Plaintiff During The Entire Time They Were Employed ....................................................... 15

C.   Defendant Provided Accurate Time Cards To Plaintiffs From August 2007 and Thereafter ...................................................................................... 16

CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

Page

## Cases

*Baas v. Dollar Tree Stores*, 2009 U.S. Dist. LEXIS 57531  *17
  (N.D. Cal. June 18, 2009) ........................................................................... 12

*Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir. 1993) ....................................... 11

*Cai v. Fishi Cafe, Inc.*, 2007 U.S. Dist. LEXIS 73764 *11 (N.D. Cal. Sept. 20, 2007)7, 8

*Chao v. A-One Med. Servs.*, 346 F.3d 908, 917-918 (9th Cir. 2003) ............................ 10

*De Simas v. Big Lots Stores, Inc.,* 2007 U.S. Dist. LEXIS 19257  *9 (N.D. Cal. Mar. 2, 2007) ...................................................................................... 12

*Dent v. Cox Communications Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007) ... 11

*Dunlap v. Superior Court*, 142 Cal.App.4th 330, 337 (2006)  ....................................... 12

*Harris v. Vector Mktg. Corp.*, 2010 U.S. Dist. LEXIS 5659  *8
(N.D. Cal. Jan. 5, 2010)      12, 14

*Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1213 (1992) ........................... 8

*Moore v. Genesco, Inc.*, 2006 U.S. Dist. LEXIS 71115   *7
  (N.D. Cal. Sept. 20, 2006) ........................................................................... 13

*Moreno v. Autozone, Inc.*, 2007 U.S. Dist. LEXIS 43873 *4
  (N.D. Cal. June 5, 2007) ............................................................................. 14

*Puongpun Sananikone v. United* States, 2010 U.S. Dist. LEXIS 126919 *1, *7-8  (E.D. Cal. Nov. 30, 2010) ................................................................................ 14

*Reynolds v. Bement*, 36 Cal.4th 1075 .............................................................. 7

*Sandy v. McClure*, 676 F. Supp. 2d 866, 879 (N.D. Cal. 2009) ....................................... 8

*Siam v. Potter*, 2005 U.S. Dist. LEXIS 11893 *20-21 (N.D. Cal. May 16, 2005).......... 14

*Singh v. 7-Eleven, Inc.*, 2007 U.S. Dist. Lexis 16677 *20 .......................................... 7, 9

*Thomas v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1008 (N.D. Cal. 2007).......... 12

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128, (1985) ............................... 12

*Valladon v. City of Oakland*, 2009 U.S. Dist. LEXIS 97485 (N.D. Cal. Oct. 20, 2009) 12

*Wady v. Provident Life & Accident Ins. Co. of Am.,* 216 F. Supp. 2d 1060 ..................... 8

*Wasco Prods. v. Southwall Techs., Inc.,* 435 F.3d 989, 992 (9th Cir. Cal. 2006) ............ 8

*Weisman v. Blue Shield of Cal.,* 163 Cal. App. 3d 61, 68 .................................................. 7

## **Statutes**

*Code of Civil Procedure* §340(a) .................................................................................... 12

*Labor Code,* §1194 and 226.7 ........................................................................................ 7

*Labor Code,* §2699(a) ............................................................................................. 12, 13

*Labor Code,* §2699(d) ................................................................................................... 13

*Labor Code* §2699.3(a)(2)(A) ....................................................................................... 13

*Labor Code* §2699.3(c)(2)(A) ....................................................................................... 13

Notice And MPAs In Support Of Motion For Summary Judgment Or, Alternatively, Partial Summary Judgment

1

### NOTICE OF MOTION

2     To Plaintiffs and their attorney of record:

3     PLEASE TAKE NOTICE that on January 25, 2011 at 9:00 a.m. in Courtroom 2

4 (before the Honorable Howard Lloyd) of the above-entitled Court, Defendants Antique &

5 Salvage Liquidators, Inc., Howard Misle, AMI Southern California, Inc., American Metal

6 & Iron, Inc., Big H Enterprises, Inc. and Dimond Metals, Inc. will move for summary

7 judgment / partial summary judgment under FRCP 56(b), or, in the alternative,

8 adjudication of undisputed issues under FRCP 56(d), on Plaintiffs' Second Amended

9 Complaint and each cause of action therein.  Defendants contend that no genuine issues of

10 material fact exist as to the claims presented and that Defendants are entitled to judgment

11 as a matter of law.

12

### INTRODUCTION

13     Plaintiffs were employed by Defendant Antique & Salvage Liquidators, Inc.

14 ("ASL") at various points starting in 2006 and 2007 and ending on December 18, 2008.

15 On March 6, 2009, Plaintiffs filed this action against ASL, claiming violations of federal

16 and state wage laws based on allegations they were not paid overtime wages or provided

17 rest/meal breaks.  Prior to August 2007, ASL manually recorded the time and wages

18 payable to the Plaintiffs.  Starting in August 2007, these tasks were accomplished using a

19 hand scanning system which automatically tracked the work and break hours of each ASL

20 employee, including Plaintiffs, and which data was sent to Prime Pay, a company hired by

21 ASL to provide payroll services, which would then calculate wages owed, including

22 overtime.  Although ASL denies having any liability to Plaintiffs, by this motion ASL

23 contends there is no genuine controversy concerning the accuracy of the time records

24 generated by the hand scan system which establish that Plaintiffs were paid the correct

25 amount of overtime and provided with breaks. In interrogatory responses and in

26 depositions, each Plaintiff uniformly answered that he could not recall any of the dates or

27 hours for which he was not paid overtime wages or provided a break.  Thus, ASL moves

28 for partial summary judgment / adjudication as to Plaintiffs' claims for overtime wages,

1  breaks and allegedly insufficient time cards for the period after the hand scanning system

2  was implemented.

3       On February 11, 2010, Plaintiffs filed an amended complaint which added as

4  Defendants AMI Southern California, Inc., American Metal & Iron, Inc., Big H

5  Enterprises, Inc., and Dimond Metals, Inc., each of which are separate corporations under

6  common ownership with ASL.   Plaintiffs' amended pleading also added Howard Misle, a

7  director and chief executive officer of ASL, as a Defendant. These Defendants contend

8  there is no basis to hold them under any of the claims because they did not employ

9  Plaintiffs and there is no other basis alleged in the SAC to render them liable for the

10  alleged failures of ASL.

11       All Defendants also move for summary adjudication on Plaintiff's 7th claim under

12  California Labor Code §§2698 *et seq.* on the ground it is time-barred as a matter of law.

13  **STATEMENT OF THE CASE**

14  **I.**    **Allegations Of The Second Amended Complaint**

15       Plaintiffs' operative pleading is their Second Amended Complaint ("SAC").  That

16  pleading alleges that Plaintiffs, Edwin Martinez, Roger Lindolfo, Wilmer Ruiz, Gabriel

17  Franco, Oscar Rodriguez and Amador Martinez were employed on a hourly basis by ASL.

18  (SAC ¶1)   Plaintiffs allege that during the course of their employment with ASL, they

19  "regularly worked in excess of 8 hours per day and more than 40 hours per week."  (SAC

20  ¶10)  Plaintiffs further allege that ASL failed to provide them with a "meal break or [other]

21  breaks required by law."  (SAC ¶33)

22       In the first cause of action, Plaintiffs allege that under California *Labor Code* §510,

23  they are entitled to 1½ times their regular pay "for hours in excess of 8 in one day, or 40

24  hours in one week," and 2 times their regular pay "for hours in excess of 12 in one day."

25  (SAC, ¶15)   Plaintiffs allege they worked more than 8 hours a day and 40 hours per week,

26  but were not paid overtime wages.  (Id., ¶16)   Plaintiffs further contend that this failure

27  was done "knowingly and willingly."  (Ibid.)   Plaintiffs bring an action under *Labor Code*,

28  §1194(a), to recover the allegedly unpaid overtime wages, together with interest, costs  and

1 attorneys fees.  (SAC ¶¶17, 20)

2    In their second cause of action, Plaintiffs allege that ASL's alleged failure to pay

3 overtime wages for the hours worked in excess of 40 in a given week violates and may be

4 redressed under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§207 and

5 216(b).

6    In their third cause of action, Plaintiffs allege they were not provided meal or rest

7 break as required by California *Labor Code*, §226.7 and are entitled to an additional hour

8 of pay for each missed break or rest period.

9    In their fourth cause of action, Plaintiffs seek the penalty prescribed by *Labor Code*,

10 §203, for ASL's alleged failure to pay overtime wages.

11    In their fifth cause of action, Plaintiffs allege that the failure to pay overtime wages

12 and provide meal / rest breaks violates *Business & Professions Code*, §172000 et seq.

13    In their sixth cause of action, Plaintiffs allege that they were not provided "accurate

14 and complete" wage statements as required by California *Labor Code*, §226.

15    In their seventh cause of action, Plaintiffs seeks the civil penalties prescribed by the

16 Labor Code Private Attorneys General Act of 2004, *Labor Code*, §§2698 et. seq., for each

17 of the violations alleged above.

18 **II.**    **Statement Of The Relevant Facts**

19    **A.**    **The Business Of ASL**

20    ASL is a California corporation formed in 1997 and located in San Jose, California.

21 (Misle decl., ¶2)   At the relevant times, ASL was engaged in the business of recycling

22 computer monitors and televisions pursuant to the California Electronic Waste Recycling

23 Act, embodied in Public Resources Code, §42460 et seq. (Ibid)  Under this program, ASL

24 would collect discarded televisions and monitors, disassemble them and recycle the

25 constituent parts (Ibid.)  ASL would then submit a claim to the State seeking a statutory

26 fee for each pound of electronic waste which had been successfully recycled.  (Ibid.)

27    **B.**    **The Ownership and Management Of ASL**

28    The shares of ASL are 100% owned by Big H Enterprises, Inc. ("Big H"), a

California corporation.  (Misle decl., ¶2)   At all times, Defendant Howard Misle served on ASL's board of directors and was the company's chief executive officer.  (Ibid.)  Misle's role consisted of establishing business policy decisions and other high level decision-making.  (Id., ¶3)   The day-to-day operations of ASL, including employee issues, were managed by Steve Hart and William McGeever.  (Ibid.)  Dave Lewis was hired to oversee the laborers who worked in the facility, and Lewis hired Chris Oliviero to specifically manage and oversee the work of the Plaintiffs and similar employees.  (Lewis decl., ¶2)

Oliviero had the ultimate power to hire and fire employees who worked in the facility the determination of their hours, and the payment of their compensation, including the Plaintiffs.  (Misle decl., ¶3; Lewis decl., ¶2)

Mr. Misle never participated in or had any role whatsoever in the hiring or firing of yard works, including Plaintiffs, or in the determination or calculation of their compensation.  (Misle decl., ¶3; Lewis decl., ¶3)

### C.   Other Corporate Defendants

Defendants American Metal & Iron, Inc. ("AMI") and Dimond Metals, Inc. ("DMI") are California corporations whose shares are entirely owned by Big H. (Misle decl., ¶4)   At the relevant times, AMI and DMI were engaged in the business of dealing in scrap metal, although AMI is no longer in business.  (Ibid)   Neither AMI nor DMI ever participated as recyclers in the State's e-waste recycling program.   (Ibid.)

AMI Southern California, Inc. ("AMI So-Cal") is a California corporation and was engaged in business as a recycler of e-waste under the State's program. (Misle decl., ¶5)   AMI So-Cal was located in Carson, California and had different employees and different managers than ASL.  (Ibid.)

Big H is a company which holds the shares of each of the corporations listed above. (Misle decl., ¶¶2, 4, 5)

Except for ASL, none of the Defendants had or exercised any control or direction in the hiring or working conditions of Plaintiffs; none of them had an employment contract with Plaintiffs; and none of them paid their wages.  (Misle decl., ¶6)

**D.**   **Plaintiffs**

Plaintiffs were hired by ASL at various times in 2006 and 2007.  (Pappy decl., Exhibits B1-8, Plaintiffs' Responses to Interrogatory No. 1)  Plaintiffs worked in ASL's facility, and their jobs consisted of handling, dismantling of televisions and computer monitors for recycling under the State's e-waste program. (Lewis decl., ¶2) On occasion, the Plaintiffs and other employees having similar job functions would work at an off-site event to collect discarded televisions and monitors from the public.  (Ibid.)

In interrogatories, each Plaintiff was asked to state the dates on which they worked more than 8 hours in a day and 40 hours in a week, but were not paid the full amount of overtime compensation. (Pappy decl., ¶2; Exh. B1-A8, Interrogatory nos. 2-5)   Each Plaintiff provided the exact same response to each question, i.e., that he "cannot recall" or "is without sufficient recollection" to answer the interrogatory.  (Ibid.)   Plaintiffs also uniformly stated the same response with respect to breaks, i.e., they are "without sufficient recollection" to determine when they were not provided with meal or rest breaks. (Id., responses 8, 9)

Prior to August 2007, Plaintiffs and other yard workers would use a punch clock to keep track of their arrival and departure from the yard.   (Lewis decl., ¶4)  The time cards were maintained by Chris Oliveiero who was tasked with calculating the time spent by each Plaintiffs, including overtime, and then relaying this information to ASL's payroll service company, Prime Pay. (Ibid.)

Starting in August 2007, ASL began using an automatic hand-scan system to automatically track the time worked by each employee. (Lewis decl., ¶4) This system kept track of the employees' arrival and departure times, including lunch breaks, by scanning the back of his/her hand and then automatically relaying the information to Prime Pay. (Ibid.) Prime Pay would then prepare compensation checks for each Plaintiff based on this information. (Ibid.; Exhibit A)

**ARGUMENT**

**I.  Defendants  Misle, AMI Southern California, Inc., American Metal & Iron, Inc., Big H Enterprises, Inc., and Dimond Metals, Inc. Are Entitled To Summary Judgment On The SAC, Or Summary Adjudication As To Each Claim.**

The Defendants other than ASL move under FRCP 56(b) and (d) for summary judgment on the entire SAC, and as to the entirety of each claim therein.   These Defendants contend that there is no genuine issue as to any material fact on the issue of their liability to Plaintiffs.   These Defendants contend that they were never "employers" of Plaintiffs, as that term is used under either the state or federal labor laws.   These Defendants also contend that they (assuming they were considered "employers") cannot be liable under the 2nd cause of action under the FLSA because after August 2007, Plaintiffs' time was by the hand scanning system which appropriately calculated Plaintiffs' wages, and claims pre-dating August 2007 are time-barred as to these Defendants under the 2-year statute of limitations.   These Defendants also challenge the 7th claim under the Private Attorney General Act on the ground it is barred by the statute of limitations.

**A.  The Defendants Other Than ASL Are Entitled To Summary Adjudication On The 1st and 3rd through 6th Causes of Action Because They Did Not "Employ" Plaintiffs Within The Meaning Of California Law.**

Plaintiffs' 1st and 3rd through 6th causes of action seek unpaid compensation and statutory penalties pursuant to sections 1194, 226.7, 203 and 226 of the California Labor Code.   Each of these code sections authorizes an action by an employee against his/her employer.  Plaintiffs' 5th cause of action asserts that these same statutory violations may be redressed pursuant to section 17200 of the *Business & Professions Code.*

Plaintiffs allege that ASL was their employer. (SAC ¶¶8, 16)   Plaintiffs do not allege that any other of the Defendants was their employer.  The only allegations regarding the role of AMI So-Cal, AMI, DMI and Big H is that they are under "common direction and control" of Misle and that their operations were "interrelated" with ASL's. (SAC ¶4) These allegations presumably are directed at attempting to establish that the Defendants engage in related activities and whose combined income meets the threshold required for

1  federal question jurisdiction under 29 U.S.C. §§203(r)(1), 203(s) and 207(a)(1)  (See, SAC

2  ¶23)  Misle is alleged, on information and belief, to be an executive, owner, manager,

3  director, associate, and/or employee of ASL, and that he has "effective economic control"

4  over Plaintiffs' work conditions and work situations."  (SAC ¶5)

5       Under California labor statutes, "employer" refers to the common law definition of

6  that term unless the operative statute "clearly and unequivocally indicates otherwise."

7  *Reynolds v. Bement*, 36 Cal.4th 1075, 1086-1087 (2005)  "An employee is an individual

8  who performs services subject to the right of the employer to control both what shall be

9  done and how it shall be done and an employer is a person for whom an individual

10  performs services as an employee."  *Weisman v. Blue Shield of Cal.*, 163 Cal. App. 3d 61,

11  68 (1984); *Singh v. 7-Eleven, Inc.*, 2007 U.S. Dist. Lexis 16677 *20.  Here, ASL was the

12  employer of Plaintiffs, as is alleged in the SAC.  ASL hired Plaintiffs, directed where and

13  when they worked and determined and paid their wages.

14       Misle was not Plaintiffs' employer.  Although Misle did not in fact exercise any

15  direction or control over Plaintiffs, their employment, their breaks, or the payment of their

16  overtime (Misle decl., ¶¶3, 6, 9), California law is settled that corporate agents are not

17  considered "employers" under the California Labor Code, even if those agents "exercise[d]

18  control over the wages, hours, or working conditions" of the employee. *Reynolds v.*

19  *Bement*, *supra*, 36 Cal.4th at 1087, 1085; *Cai v. Fishi Cafe, Inc.*, 2007 U.S. Dist. LEXIS

20  73764 *11 (N.D. Cal. Sept. 20, 2007) [granting summary judgment on claims under *Labor*

21  *Code*, §1194 and 226.7]

22       Defendants AMI So-Cal, AMI, DMI and Big H, too, were not employers of

23  Plaintiffs.  None of these Defendants had or exercised any control or direction in the hiring

24  or working conditions of Plaintiffs; none of them had an employment contract with

25  Plaintiffs; and none of them paid their wages. (Misle decl., ¶¶6, 9; Lewis decl, ¶¶3, 4)

26       Therefore, Misle, AMI So-Cal, AMI, DMI and Big H are entitled to summary

27  judgment on the 1st and 3rd through 6th causes of action based on alleged California *Labor*

28  *Code* violations.

That Plaintiffs allege that the corporate Defendants (other than ASL) are engaged in businesses which are related to ASL, or under common ownership or control, does not render them "employers" of Plaintiffs, nor make them liable for Plaintiffs' wages. Plaintiffs do <u>not</u> allege that Defendants are alter egos of another or that Defendants committed acts of bad faith rendering it unjust to observe the separateness of these corporate entities. *Cai v. Fishi Cafe, Inc.*, *supra*, 2007 U.S. Dist. LEXIS 73764 at *11. *Wady v. Provident Life & Accident Ins. Co. of Am.,* 216 F. Supp. 2d 1060, 1066 *14 (C.D. Cal. 2002). That corporations share common directors and officers and are otherwise related is not sufficient to make them "employers" or render them liable for the acts of the employing party, particularly the in absence of any allegation, or proof, of undercapitalization, commingling of funds or disregard for corporate formalities and "specific manipulative conduct" which would render it inequitable to observe the corporate separation. *Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1068 (C.D. Cal. 2002); *Sandy v. McClure*, 676 F. Supp. 2d 866, 879 (N.D. Cal. 2009); *Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1213 (1992)[1]   Likewise, other than with respect to Big H, there is no evidence of actual ownership in ASL by the other Defendants, which is "prerequisite to alter ego liability, and not a mere 'factor' or 'guideline.'" *Cai v. Fishi Cafe, Inc., supra*, 2007 U.S. Dist. LEXIS 73764 at *12.

## B. The Defendants Other Than ASL Are Entitled To Summary Adjudication On The 2nd Cause of Action For Allegedly Unpaid Overtime Under The FLSA.

Plaintiffs' second cause of action alleges that each of the Defendants is liable for overtime wages pursuant to the FLSA. Defendants Misle, AMI So-Cal, AMI, DMI and Big H contend they are not liable under the FLSA because they are not "employers" as defined under the federal scheme. But even if one or more of the Defendants qualified as Plaintiffs' employer under federal law, summary judgment must still be granted. The hand scanning system implemented by ASL in August 2007, indisputably kept accurate track of

---

[1] Plaintiffs do not plead an alter ego theory. Defendants, therefore, are under no obligation to disprove any such claim in their motion. *Wasco Prods. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. Cal. 2006) Nevertheless, there is no basis for finding alter ego in this case. (Misle decl., ¶¶7-9)

Plaintiffs' time, including overtime.   (Lewis decl., ¶4, Exhibit A)   Thus, the only conceivable claims against these Defendants for unpaid overtime must be based on conduct which predated August 2007, when compensation was calculated manually.   The applicable statute of limitations to institute an action for unpaid wages under the FSLA is 2 years for non-wilful violations.   Defendants Misle, AMI So-Cal, AMI, DMI and Big H, were not sued in this action until February 2010, more than two years after August 2007 and thus after the statute expired on claims emanating from the manually-kept time. Hence, these Defendants are entitled to summary judgment for this reason as well.

### 1. The Defendants Other Than ASL Were Not Plaintiffs' Employers As Defined Under The FLSA.

Unlike under California law, an "employer" under the FLSA is not limited by the common law definition of the term.   An employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Singh v. 7-Eleven, Inc.*, *supra*, 2007 U.S. Dist. Lexis 16677 at *7, quoting 29 U.S.C. §203(d).   The term also encompasses a company which jointly employs a worker with another company.   Joint employment situations are either horizontal, i.e., where there is a substantial merging of operations and sharing of employees by the two companies, or vertical, in which one company contracts for workers who are employed by an intermediary company. *Id.* at *7-8.   None of the above concepts, however, applies to the non-ASL defendants.   Misle had no involvement whatsoever with the employment or payment of wages with respect to any of the Plaintiffs.   Misle's role with ASL was limited to policy level decisions.   Steve Hart managed the business, along with Bill McGeever and Dave Lewis who managed the day to day operations, including with respect to the hiring and compensation of employees.   Chris Oliveiero was in charge of keeping track of Plaintiffs' time when the hand scan system was not in use.   Hart, McGeever, Lewis and Oliveiero only worked for ASL before it closed down; they never worked for Misle. (Misle  decl., ¶8)  In short, Misle was never acting in the interest of ASL with respect to the Plaintiffs, and thus he is not an "employer" under federal scheme.

1    As to AMI So-Cal, AMI, DMI and Big H,, there is no basis finding they were joint

2   employers along with ASL.  The test of horizontal joint employment has been stated by the

3   Ninth Circuit as follows:

4        "Where the employee performs work which simultaneously benefits two
         or more employers, or works for two or more employers at different times
5        during the workweek, a joint employment relationship generally will be
         considered to exist in situations such as:
6
         (1) Where there is an arrangement between the employers to share the
7        employee's services, as, for example, to interchange employees; or
         (2) Where one employer is acting directly or indirectly in the interest of
8        the other employer (or employers) in relation to the employee; or

9        (3) Where the employers are not completely disassociated with respect
         to the employment of a particular employee and may be deemed to share
10       control of  the employee, directly or indirectly, by reason of the fact
         that one employer controls, is controlled by, or is under common control
11       with the other employer.

12   *Chao v. A-One Med. Servs.*, 346 F.3d 908, 917-918 (9th Cir. 2003)    Here, Plaintiffs did

13   not work for any Defendant other than ASL.  Nor did their work benefit two or more

14   employers.  As indicated, Plaintiffs' jobs consisted of helping to collect, store and strip

15   down computer monitors for the sole purpose of ASL's submission of a claim to the State

16   of California for performing these recycling services.   The claims submitted by ASL to the

17   State were entirely for its own benefit.  (Misle decl., ¶8) In fact, none of the other

18   Defendants participated in the State's e-waste program except for AMI So-Cal, which did

19   not use any labor of the Plaintiffs' (or any other employee of ASL) as it operated entirely

20   in Carson, in Southern California, whereas ASL was located in San Jose were all the work

21   of Plaintiffs was performed.   (Misle decl., ¶8)  Hart, McGeever, Lewis and Oliveiero only

22   worked for ASL before it closed down; they never worked for AMI So-Cal, AMI, DMI or

23   Big H before ASL closed down.  (Misle  decl., ¶8)

24    As to vertical joint employment, courts in this circuit look apply the "economic

25   reality test" based on whether the alleged joint employer has the power: (1) to hire and fire

26   the employees; (2) to supervise and control employee work schedules or conditions of

27   employment;  and  (3)  to  determine  the  rate  and  method  of  payment  and  maintain

28   employment records.  *Singh v. 7-Eleven, Inc.*, *supra*, 2007 U.S. Dist. Lexis 16677 at *9.

The determination is a question of law.  *Ibid.*   Here, there is no evidence creating a genuinely disputed issue whether the non-ASL Defendants can be considered joint employers under the vertical test.   None of them had anything to do with Plaintiffs or the other laborers of ASL.  They had no right or power to hire and fire the employees, to supervise and control the employee work schedules or conditions of employment, to determine the rate and method of payment or maintain employment records.   This was all done by ASL, except for the payment and overtime records which were also done by Prime Pay.  (Misle decl., ¶9)

> **2.  Plaintiffs Were Paid The Correct Amount Of Overtime After August 2007, When Prime Pay Was In Charge Of Tracking Employee Hours And Determining Their Compensation.**

As of mid-August 2007, ASL implemented a system which scanned the hands of its employees, including Plaintiffs, to determine the times they arrived at and departed from the premises for the start and end of the work day and for lunch breaks.  The scanned information was relayed to Prime Pay which used it to calculate hours and compensation for ASL employees, including Plaintiffs. (Misle decl., ¶10; Lewis decl., ¶4)  Plaintiffs never once complained to ASL or Prime Pay regarding their compensation. (Lewis decl., ¶4)

In their interrogatory responses, each Plaintiff stated under oath that he could not recall any date on which he worked overtime, but not paid the full amount due. (Pappy decl., Exh. B1-A8, Interrogatory nos. 2-5)  Plaintiffs, thus, have no evidence to dispute the Prime Pay records which show that they were paid the correct amount of overtime from mid August 2007, to their late day of employment.  Defendants are entitled to summary judgment on claims for overtime which post-date August 2007.

> **3.  The Statute of Limitations Has Expired As To The FLSA Claims On The Claims Which Pre Date August 2007.**

An action to recover unpaid overtime wages under FLSA must be commenced within two years after the cause of action accrued, unless the cause of action arises out of a "willful violation" in which case the statute is three years  *Dent v. Cox Communications*

1  *Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007), citing 29 U.S.C. § 255(a).  A new

2  cause of action accrues at each payday immediately following the work period for which

3  compensation is owed.    *Dent*, *supra*, at 1144; *See, also*, *Biggs v. Wilson*, 1 F.3d 1537,

4  1540 (9th Cir. 1993) [statute of limitations under FLSA accrues "the day the employee's

5  paycheck is normally issued, but isn't".]

6        A violation is willful if "the employer either knew or showed reckless disregard for

7  the matter of whether its conduct was prohibited by the ADEA." *Trans World Airlines, Inc.*

8  *v. Thurston*, 469 U.S. 111, 128, (1985).   "If an employer acts unreasonably, but not

9  recklessly, in determining its legal obligation" under the FLSA, its action is not willful.

10 *Valladon v. City of Oakland*, 2009 U.S. Dist. LEXIS 97485 (N.D. Cal. Oct. 20, 2009)

11       Here, there is no evidence that the non-ASL Defendants acted willfully, i.e., that

12 they either knew or acted recklessly with respect to the payment of overtime to Plaintiffs.

13 As indicated above, the non-ASL Defendants had nothing to do with the determination of

14 Plaintiffs' overtime compensation and they had no knowledge or information to suggest

15 that Plaintiffs were not being appropriately paid.  Therefore, the statute of limitations on

16 the claims against them is 2 years.

17       These Defendants were first sued on February 11, 2010.  Therefore, all claims

18 which predate February 11, 2008 are time barred.    As to the alleged post February 11,

19 2008, violations, as indicated above, there is basis to hold any Defendant liable because by

20 that time ASL had already implemented the hand scanning.

21 **C.     The 7th Claim Is Time Barred.**

22       Plaintiffs' Seventh Cause of Action seeks civil penalties and attorneys' fees under the

23 California Private Attorney General Act of 2004 (*Labor Code* §2698 et seq. ) ("PAGA")

24 for claimed violations of *Labor Code* §§201, 202, 203, 226, 226.7, 510, 512, 558, 1174,

25 1174.5, and an unspecified wage order.    PAGA deputizes aggrieved, private parties to

26 seek civil penalties which were traditionally only recoverable by the Labor and Workforce

27 Development Agency ("LWDA").   *Labor Code*, §2699(a); *Dunlap v. Superior Court*, 142

28 Cal.App.4th 330, 337 (2006).

Claims brought under PAGA, regardless of the nature of the underlying violations, seek civil penalties and thus are subject to the one-year limitations period of *Code of Civil Procedure* §340(a). *Thomas v. Home Depot USA Inc*., 527 F. Supp. 2d 1003, 1008 (N.D. Cal. 2007); *Harris v. Vector Mktg. Corp.*, 2010 U.S. Dist. LEXIS 5659  *8 (N.D. Cal. Jan. 5, 2010); *Baas v. Dollar Tree Stores*, 2009 U.S. Dist. LEXIS 57531  *17 (N.D. Cal. June 18, 2009); *De Simas v. Big Lots Stores, Inc.,* 2007 U.S. Dist. LEXIS 19257  *9 (N.D. Cal. Mar. 2, 2007); *Moore v. Genesco, Inc.*, 2006 U.S. Dist. LEXIS 71115  *7 (N.D. Cal. Sept. 20, 2006)

As a prerequisite to filing an action under PAGA, a plaintiff must give written notice by certified mail to the LWDA and the employer of the specific provisions of this code alleged to have been violated, including the facts and theories to support the alleged violation. The plaintiff has the right to file suit when the LWDA provides return notice that it does not intend to investigate, or if the LWDA does not respond for 33 calendar days. *Labor Code* §2699.3(a)(2)(A)  Under *Labor Code* §2699.3(c)(2)(A) -- which applies to certain types of alleged violations not encompassed by subdivision (a)(2)(A) -- the plaintiff has the right to sue if the employer fails to cure the violation within 33 calendar days of the notice.   Thus, under both parts of the statute, a plaintiff has the right to sue no later than 33 days after sending the written notice.

Subdivision (d) of *Labor Code*, §2699.3 states: "the periods specified in this section are not counted as part of the time limited for the commencement of the civil action to recover penalties under this part."  Since a plaintiff has the right to sue no later than 33 days after giving the statutory notice, the maximum statute of limitations under a PAGA claim is 1 year plus 33 days from the alleged violation.[2]

Plaintiffs' last day of employment with ASL was December 18, 2008.  Plaintiffs allege they gave notice to the LWDA pursuant to *Labor Code*, §2699.3 on October 14,

---

[2] Although Plaintiffs allege they received a return notice on December 8, 2009, by which the LWDA declined to take action against ASL, Plaintiffs obtained the right to sue on November 16, 2009, when the LWDA failed to respond within the 33 day period prescribed by *Labor Code*, §2699.3(a) and (c).   Thus, the statutory tolling lasted only for 33 days.

2009, and that the LWDA declined to investigate.  (SAC, ¶¶64-65)   One year and thirty three days after December 18, 2008, is January 19, 2010.  Plaintiffs added their initial PAGA claim in their First Amended Complaint on February 11, 2010, 1 year and 42 days after their employment was terminated.  This means that every PAGA claim alleged by Plaintiffs is time barred.

Because of the statutory pre-conditions to a plaintiff's right to file the claim, it has been uniformly held that PAGA claims do not relate back to the original complaint for purposes of determining whether the statute of limitations has expired. *Baas, supra*, 2009 U.S. Dist. LEXIS 57531 *17-18.   *Harris*, *supra*, 2010 U.S. Dist. LEXIS 5659 *9-17; *Moreno v. Autozone, Inc.*, 2007 U.S. Dist. LEXIS 43873 *4 (N.D. Cal. June 5, 2007). Plaintiffs' PAGA claim is therefore barred by the statute of limitations, each Defendant is entitled to summary judgment on the 7th claim.

## II.    ASL Is Entitled To Summary Adjudication On The Seventh Claim

For the reasons stated in argument I.C., *supra*, ASL is entitled to summary judgment on the 7th Claim, which is time barred as a matter of law.

## III.   Each Defendant Is Entitled To Partial Summary Judgment

FRCP 56(b) authorizes a "party against whom a claim … is asserted … to move … for a summary judgment in the party's favor as to … any part thereof."     "Rule 56(b) allows summary adjudication on individual parts of claims brought against a party." *Siam v. Potter*, 2005 U.S. Dist. LEXIS 11893 *20-21 (N.D. Cal. May 16, 2005); *Puongpun Sananikone v. United* States, 2010 U.S. Dist. LEXIS 126919 *1, *7-8  (E.D. Cal. Nov. 30, 2010)    Similarly, under Rule 56(d), where an action is not otherwise fully disposed on summary judgment, "the court … shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted," and "thereupon make an order specifying the facts that appear without substantial controversy … and directing such further proceedings in the action as are just."

Defendants invoke the above sections and based on all the papers submitted, request the Court:

(A) to issue an order finding that Plaintiffs were paid the proper amount of overtime wages beginning in August 2007, up to an including the last day of their employment, or alternatively, specifying the days and hours of overtime for which there remains a controversy for the trial and those which are not in controversy.

(B) to issue an order finding that Plaintiffs were provided with meal and rest breaks during the entirety of their employment, or alternatively, specifying the days and breaks over which there remains a controversy for the trial and those which are not in controversy.

(C) to issue an order finding that the time records provided by ASL from August 2007 forward were accurate and otherwise compliant, or alternatively, specifying the time records over which there remain a genuine controversy for the trial and those which are not in controversy.

(D) to issue an order making specific findings embraced by the matters argued in Sections I and II, *supra*.

**A.   Defendants Paid The Correct Amount Of Overtime To Each Plaintiff For Each Pay Period From August 2007 To December 18, 2008.**

Defendants have submitted the time records for each Plaintiffs from August 2007 to their last day of employment, as such records were prepared and maintained by Prime Pay and based on an automatic hand scan system implemented by ASL. (Lewis decl., ¶4, Exh. A)  ASL has attested that such records are true and correct.   (Ibid.) There is no contrary evidence as Plaintiffs have stated under oath in interrogatories that they "cannot recall" or "lack sufficient recollection" to determine which hours and weeks they were not paid overtime.  (Exhs. B1-B8, Responses 2-5) Defendants are entitled to an order establishing that Plaintiffs were paid the correct amount for overtime work performed (1) for the pay periods indicated on these records, or (2) for each period for which Plaintiffs fail to validly introduce admissible evidence to raise a genuine issue of fact as to the sufficiency of the overtime received for each pay period.   Such an order will substantially narrow the issues at trial relative to the question of overtime pay, as alleged in the 1st, 2nd, 4th, 5th and 6th

causes of action.

### B.  Defendants Provided Rest And Meal Breaks To Each Plaintiff During The Entire Time They Were Employed.

ASL's employee handbook specifically states that employees are entitled to, and "must take" rest and meal as provided by law.  (Lewis decl., ¶5, Misle decl., ¶12 Exh. C ) ASL in fact provided Plaintiffs with meal and rest breaks and never once told any Plaintiff (or any other employee) he or she could not take a meal or rest break. (Lewis decl., ¶5) There is no contrary evidence as Plaintiffs have stated under oath in interrogatories that they "cannot recall" or "lack sufficient recollection" to determine which days they were not provided a meal or rest break. (Exhs. B1-B8, Responses 8 and 9) Defendants are entitled to summary adjudication on the meal and rest break issue, or at a minimum, for each day for which Plaintiffs fail to validly introduce admissible evidence to raise a genuine issue of fact that he was not provided  a break or rest period as provided by law.

### C.  Defendant Provided Accurate Time Cards To Plaintiffs From August 2007 and Thereafter.

Plaintiffs base their allegations of time card violations under *Labor Code*, 226 based on the same allegations that they were not paid the proper amount of overtime and provided rest breaks.    For the reasons stated in sections III.A and B, *supra*, Defendants are entitled to summary adjudication on the time card issue, or at a minimum, for each time card entry for which Plaintiffs fail to validly introduce admissible evidence to raise a genuine issue of fact that the card was inaccurate.

## CONCLUSION

For the reasons stated above, Defendants are entitled to summary judgment, or partial summary judgment on each of the claim alleged in the SAC.

Dated:  December 16, 2010                  MORGAN, FRANICH, FREDKIN & MARSH

*/s/ ELIZABETH M. PAPPY*

By: _____

Attorneys for Defendants