MARK B. FREDKIN, ESQ. (SBN 53550)
WILLIAM SIAMAS, ESQ. (SBN 133111)
ELIZABETH M. PAPPY, ESQ. (SBN 157069)
MORGAN, FRANICH, FREDKIN & MARSH
99 Almaden Boulevard, Suite 1000
San Jose, California 95113-1613
Telephone: (408) 288-8288
Facsimile: (408) 288-8325

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTINEZ, ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> ANTIQUE & SALVAGE LIQUIDATORS, INC., ET AL., <br><br> Defendants. | Case No. C09-00997 HRL <br><br><br> Date: January 25, 2011 <br> Time: 10:00 a.m. <br> Dept.: 2 <br> Judge: Hon. Howard L. Lloyd <br> Trial: March 14, 2011 |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

**IN SUPPORT OF**

**PARTIAL SUMMARY JUDGMENT**

**BY DEFENDANTS AMI SOUTHERN CALIFORNIA, INC., AMERICAN METAL**

**& IRON, INC., BIG H. ENTERPRISES, INC., HOWARD MISLE AND DIMOND**

**METALS, INC.;**

**AND**

**FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANT**

**ANTIQUE & SALVAGE LIQUIDATORS, INC.**

# REPLY ARGUMENT

## I. Plaintiffs' Opposition Should Be Stricken As It Violates Northern District Rules

Plaintiffs' opposition papers comprise 30 pages. Northern District Rule 7-4(b) provides that a memorandum in opposition to summary judgment must not exceed 25 pages absent Court approval, which has neither been sought or obtained. Plaintiffs opposition also fails to contain page numbers or a table of contents and authorities. The Opposition should be stricken.

## II. The Defendants Other Than ASL Are Entitled To Summary Judgment

### A. Plaintiffs Concede That Defendants AMI Southern California, Inc., American Metal & Iron, Inc., Big H Enterprises, Inc., and Dimond Metals, Inc. Are Entitled To Summary Judgment On The SAC.

Plaintiffs' opposition does not rebut any of the evidence or arguments in the moving papers advanced on behalf of Defendants AMI Southern California, Inc., American Metal & Iron, Inc., Big H Enterprises, Inc., and Dimond Metals, Inc. Therefore, these Defendants are entitled to summary judgment.

Plaintiffs' opposition at page 2, lines 1-2 claims that the parties "have agreed to the stipulated dismissal" of these Defendants. This is not an accurate statement. While Plaintiffs' counsel indicated at or near the time their opposition was due that they wanted to dismiss these Defendants, there has been no agreement reached to that effect, nor has a dismissal been filed by Plaintiffs.

### B. Misle Is Entitled To Summary Judgment/Adjudication

#### 1. Plaintiffs Concede That Misle Is Not An "Employer" Under California Law And Thus He Is Entitled To Summary Adjudication On The 1st and 3rd through 6th Causes of Action

Plaintiffs' opposition does not rebut the contention that the Defendants other than ASL, and including Misle, are not "employers" under California law (*Reynolds v. Bement*, 36 Cal.4th 1075, 1086-1087 (2005), and thus they cannot be held liable for the State law claims embodied in the 1st and 3rd through 6th causes of action. Misle is thus, entitled to summary adjudication on these claims.

\\

**2.     Plaintiffs Have Not Submitted Competent Evidence To Raise A Genuine Issue Of Fact As To Whether Misle Was An Employer Under Federal Law.**

Under federal law, an employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Singh v. 7-Eleven, Inc.*, supra, 2007 U.S. Dist. Lexis 16677 at *7, quoting 29 U.S.C. §203(d). In the moving papers, Mr. Misle submitted evidence that he had no involvement whatsoever with the employment or payment of wages with respect to any of the Plaintiffs and that his role with ASL was limited to policy level decisions. (Misle decl., ¶¶2, 3)

Plaintiffs' characterization of Misle's role with ASL is based either on no evidence, fabricated evidence or incompetent evidence, and thus fails to raise a genuine issue of fact. For example, Plaintiffs contend that "Defendants" admitted in RFAs that Misle was authorized to determine Plaintiffs' hours, determine their wages, to hire and fire them and supervise their work. (Opp., p. 8, lines 9-14, citing Exh. 7, RFAs 5-8)  However, none of these RFAs (all which were directed at ASL) were admitted, and thus they are not evidence of anything. (Pedersen Decl., Ex. 7)  Even if they could be used as evidence, ASL objected to each one of them, and added that "Misle ... was never involved in the hiring and firing of EMPLOYEES" (Id, RFA #5), "was never involved in determination of pay of EMPLOYEES" (Id, RFA #6), "did not at any time personally maintain ... [personnel and payroll records]"  (Id, RFA #7), and "was never involved in setting work hours and work schedules of EMPLOYEES".  (Id, RFA #8)  These RFAs state that Misle could, if he wanted, empower himself to do the things mentioned, but he never did so empower himself. All of these tasks were done by other employees at ASL.

Next, Plaintiffs contend that prior to Steve Hart being hired at ASL in 2002, the "initial operation, including the employees, had been put together by MISLE himself". (*Citing to,* Pedersen Decl., Exh.10-Hart depo. pp.20:23-22:9)    The deposition does not support this proposition. Hart testified that when he was hired, ASL had a warehouse and employees, but he did not state that Misle had anything to do with the hiring.  (Id, p.20) To the contrary, Hart testified that David Jurman -- not Misle -- was supervising the

2
Reply MPAs In Support Of Motion For Summary Judgment Or, Alternatively, Partial Summary Judgment

employees.  (Id., p.20:23-25)   Moreover, the time period in question was 2002, at least four years prior to the time the first of the Plaintiffs was hired at ASL.  None of this evidence indicates Mr. Misle's role in 2007 and 2008, or with respect to any of the Plaintiffs.

Plaintiffs falsely contend that Hart testified that "MISLE ... had to make the final hiring decision" with respect to full-time warehouse staff.  (Opp., p. 9:16-22, citing Exh. 10 at p. 28:8-13).  Hart's actual testimony was:  "Q.  So when you [Hart] decided -- who decided that full-time staff would be necessary?  A. I asked Howard.  I said I needed another guy at that time.   Q.   What did Howard say?  A. 'Go hire one.'"   Again, this testimony establishes that Hart was in control of the hiring of the warehouse staff.  And further again, it has nothing to do with any of the Plaintiffs or even the time period in which Plaintiffs worked for ASL.

Plaintiffs (again) falsely characterize Hart's testimony about the decision to hire a warehouse manager.  Plaintiffs suggest that the testimony establishes that Misle made the determination that a supervisor was needed and that he did the hiring.  (Opp., p. 9:13-25, citing Exh. 10 at p. 48:2-49:10).   Hart's actual testimony was that Hart made these decisions and Misle simply said "go ahead".  (Exh. 10, p. 20:5; 20:9; 21:10)    And yet again, none of this testimony relates to the Plaintiffs or the time period they worked for ASL.

Plaintiffs (again) falsely characterize Hart's testimony claiming that "MISLE also played a role in deciding that the warehouse worker's hours would run from 8:00 AM to 5:00 PM."  (Opp., p. 10:10-11).  The actual testimony by Mr. Hart is that he asked Misle, "when do you want us [ASL] to be open" and "we decided it should be 8:00 to 5:00."  (Ibid.)    None of this testimony relates to any particular worker's hours, and none of it relates to Plaintiffs or the time period they worked at ASL.

All of the other "evidence" cited in Plaintiffs' Opposition, although regularly mischaracterized, simply relates to Misle's role as a policy maker at ASL, and has no relationship to supervising the work of employees.  In addition, there is no evidence --

whether mischaracterized or not -- which indicates Misle acted in any capacity over the work or hours of the Plaintiffs. Misle never acted "directly or indirectly in the interest of an employer in relation to an employee", and thus he was not an "employer" of the Plaintiffs.

If Misle's role at ASL were sufficient to render him an "employer," then every CEO of a company, every shareholder, and every director must necessarily be an "employer" of every employee of the corporation by virtue of his or her power within the enterprise, despite not having any supervisory role over the employee or the work performed by the employee. This is not the law. None of the cases cited by Plaintiffs stand for such a sweeping proposition. The cases emphasize the fact that all factors must be examined and one factor alone is not dispositive. *Herman v. RSR Security Services, Ltd.*, 172 F.3d 132, 139 (2nd Cir. 1999) [officer actually hired managers of plaintiffs, set work schedules and locations, directed that illegal payment practice stop]. The State of California and involved counties (defendants) of the state were found to be "employers" under the FLSA in *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1471 (9th Cir. 1983), based upon evidence that the defendants paid wages to the plaintiffs directly, set the hours and tasks to be performed by the plaintiffs after consulting with the disabled recipients, and were involved in supervision of the plaintiffs whenever disputes arose between recipients and the plaintiffs. Contrary to Plaintiffs' claim in this case, none of the *Bonnette* factors (or economic reality factors) are present. There is no evidence of power or exercise of power to hire and fire, supervision or control of the plaintiffs, determination of their pay; determination of work schedules or maintenance of their employment records.

Plaintiffs' reliance upon the concept of "operational control" is likewise unavailing. Plaintiffs cite to *Donovan v. Agnew*, 712 F.2d 1509 (1st Cir. 1983) and *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194-195. The *Agnew* case involved officers who were the only owners of the company, had offices at the plant where the plaintiffs worked, were "actively engaged" in management and supervision of the company's affairs including employee compensation and benefits. There is no such evidence in this case. The *Sabine*

4
Reply MPAs In Support Of Motion For Summary Judgment Or, Alternatively, Partial Summary Judgment

case involved the president of a company who had indirect control over payroll, insurance, and income tax matters. He put his own money in the company to meet payroll. There is no such evidence here. The factual recitation in the Opposing Papers as to *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993), makes it clear that the case has no application to this case. There is no evidence of hiring of any of the plaintiffs by Mr. Misle, supervising them, giving them directions as to how to perform their work, signing paychecks, or imposing discipline.

This is not a matter of focusing on isolated factors but rather taking each and every factor and establishing that there is no evidence to support it and that the reality is that Mr. Misle was completely uninvolved in the operations of ASL, including all facets of the employment relationships with the plaintiffs.

### 3. The Statute of Limitations Has Expired As To The FLSA Claims Against Misle On The FLSA Claims Which Pre Date August 2007.

In the moving papers, Misle claimed he was entitled to partial summary judgment on the FSLA claims which predate August 2007, because there is no evidence he acted willfully (assuming for the sake of argument he was subject to and violated the FLSA). The claims against Misle were filed on February 11, 2010, more 2 years after the alleged violations. Plaintiffs address the "willfulness" issue in their opposition at pages 20-21, but they fail to cite any evidence that Misle acted willfully, that he "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128, (1985). "If an employer acts unreasonably, but not recklessly, in determining its legal obligation" under the FLSA, its action is not willful. *Valladon v. City of Oakland*, 2009 U.S. Dist. LEXIS 97485 (N.D. Cal. Oct. 20, 2009)

### III. Defendants Are Entitled To Summary Adjudication As To The Overtime Claims Occurring After August 2007.

#### A. Plaintiffs Concede They Were Paid Overtime From Monday Through Friday.

Although Plaintiffs refused to provide this information earlier, they now concede in their Opposition that they received the correct amount of overtime pay after August 2007,

on each Monday through Friday. (Opp., p. 4:2-7) All defendants are thus, entitled to partial summary judgment establishing this fact.

### B. Plaintiffs Have Failed To Prove They Were Not Paid Correct Overtime On Certain Weekend Days When ASL Conducted A Collection Event.

In the moving papers, Defendants pointed out that in verified interrogatory answers, each Plaintiff stated that he could not recall any date on which he worked overtime, but not paid the full amount due. (Pappy Decl., Exh. B1-A8, Interrogatory Nos. 2-5) Defendants provided all the payroll records which post-dated August 2007 (after the hand scanning system was implemented), and provided evidence that no Plaintiffs ever complained until this litigation that he was not paid the full amount of overtime. (Lewis Decl., ¶5) Defendants thus moved for summary judgment on the overtime claims based on the Prime Pay time records from August 2007 to the last day of Plaintiffs' employment.

Plaintiffs' Opposition contends there is a disputed issue as to whether they were paid the correct amount of overtime on weekend days when ASL conducted a "collection event." However, Plaintiffs fail to provide any evidence that the payroll records are incorrect. Plaintiffs first state that on the dates of collection events, one or more ASL employees, principally Dave Lewis, would create a list of the employees, the start and end times, and provide this information to Chris Oliveiero for inputting into ASL's payroll system. (Opp., pp. 4-5) Plaintiffs state that "LEWIS has no personal knowledge if hours from the event sheets were altered prior to entry ... ." (Opp., p. 5, lines 8-9) Plaintiffs cite no evidence to support this statement. Moreover, it proves nothing. That Lewis cannot verify that the records were not altered is not evidence they were altered. Plaintiffs have not cited any evidence of alteration (or if they were altered, that the alteration was to reduce Plaintiffs' hours). And again, no Plaintiff ever complained about his overtime pay, and each Plaintiff stated under oath in his interrogatory responses that he could not recall one instance when he was not paid the correct amount of overtime.

The Opposition at pages 6-7 cites two instances where it is contended that overtime was not fully paid. However, neither of these instances are supported by competent evidence. The first is a collection event allegedly held on August 16, 2008, in San

Francisco. Plaintiffs contend that event lasted from 9:00 AM to 4:00 PM (Opp. p. 7:1-2, citing Exh. 1); one hour was allocated for set up time and therefore the employees must have had to start work at 8:00 AM (Id., p. 7:2-3, citing Exh. 9, p. 98:14-18); and that because San Francisco is more than 25 miles from San Jose, the travel time from ASL's warehouse had to be compensated. (Id., p. 7:4-6, citing Exh. 11, p. 86:3-24) From these three items, Plaintiffs assert that they were required to be compensated from 8 AM to 4 PM and to be paid travel time. The payroll records for that date, however, show that Plaintiffs Amado Martinez, Oscar Peralta and Lindolfo Rodriguez were paid, respectively, from 8:30 AM to 5:00 PM, 8:30 AM - 4:00 PM and 8:30 AM - 4:00 PM. (Id., p. 7:7-9) Plaintiffs' "syllogism" fails on multiple levels. To begin, Plaintiffs fail to prove that the event in question actually started at 9 AM and ended at 4 PM. The sole evidence relied is an unauthenticated "calendar" submitted under the declaration of Plaintiffs' counsel, which indicates that an event is scheduled for that date. Not only is that Exhibit unauthenticated and therefore inadmissible, there is no evidence that the event actually took place during those purported hours. Second, there is no evidence that ASL took an hour for "set up" at that purported event, or any evidence that the Plaintiffs' participated in the set up. The Opposition cites to the McGeever depo., Exhibit 9, at page 98, which says absolutely nothing about the SF event in question or any of the Plaintiffs; moreover, McGeever testified that unloading of the trucks "probably takes an hour or thereabouts," but that it "depends on the job site." Plaintiffs have provided no evidence that it took an hour to unload the truck at the particular job site. Third, Plaintiffs cite to the Lewis deposition (Exh. 11, p. 86) for the assertion that travel over 25 miles is compensated time per company policy. Lewis actually testified that he "think[s] it was over 25 miles", at least "as far as I know." This hearsay statement does not establish ASL policy. Plaintiffs have not proven the time records are inaccurate. They have provided no evidence they were even present to unload the trucks. In fact, Plaintiffs have not provided any evidence they were even at the job site, or traveling to the job site, before or after the hours reflected on the payroll record.

The other collection event allegedly occurred in "December of 2007" (Opp., p. 7, lines 12-14) The Opposition makes the same false and unsupported assumptions, and relies on the same unauthenticated and incompetent evidence in an effort to mislead the Court into believing that two of the Plaintiffs (neither of whom are named in the Opposition), were undercompensated that day. The matters cited prove nothing. There is no evidence the events took place on the hours stated, that the Plaintiffs actually worked for the full time the event was schedule, or that they were not paid for the hours worked.

But even if the Opposition were sufficient to raise a genuine issue of fact on the above matters, the trial should be limited to those days and no others. Defendants are entitled to summary judgment on all other days.

### IV. The 7th Claim Is Time Barred.

The moving papers cited five decisions from the Northern District of California which held that claims brought under PAGA, regardless of the nature of the underlying violations, seek civil penalties and thus are subject to the one-year limitations period of Code of Civil Procedure §340(a). *Thomas v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1008 (N.D. Cal. 2007); *Harris v. Vector Mktg. Corp.*, 2010 U.S. Dist. LEXIS 5659 *8 (N.D. Cal. Jan. 5, 2010); *Baas v. Dollar Tree Stores*, 2009 U.S. Dist. LEXIS 57531 *17 (N.D. Cal. June 18, 2009); *De Simas v. Big Lots Stores, Inc.*, 2007 U.S. Dist. LEXIS 19257 *9 (N.D. Cal. Mar. 2, 2007); *Moore v. Genesco, Inc.*, 2006 U.S. Dist. LEXIS 71115 *7 (N.D. Cal. Sept. 20, 2006)

> "Despite the three-year statute of limitations that applies to some of the Labor Code violations listed in § 2699.5, a PAGA claim is, by definition, a claim for civil penalties. *See* CAL. LAB. CODE § 2699(a), (f); *Caliber Bodyworks, Inc.,* 134 Cal. App. 4th at 370. This Court cannot see, nor has the Plaintiff offered, any reason why the one-year statute of limitations provided in CCP § 340(a), which applies to all actions upon a statute for a penalty, would not apply here. *See* CAL. CIV. PRO. § 340; Moreno, 2007 U.S. Dist. LEXIS 43873, 2007 WL 1650942, at *4 (finding, when presented with the same issue, that the plaintiff "offers no authority [] that would permit this Court to disregard the express language of California Code of Civil Procedure § 340(a) and apply a different limitations period.")

*Thomas v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1008 (N.D. Cal. 2007)

Just as the plaintiff in *Thomas* asserted, Plaintiffs ask this Court to ignore the plain language of the statute classifying the remedies available under the PAGA scheme as penalties. There is no legal authority to justify such a finding.

## V. Defendants Provided Rest And Meal Breaks To Each Plaintiff During The Entire Time They Were Employed.

As pointed out in the moving papers, Plaintiffs stated under oath in interrogatories that they "cannot recall" or "lack sufficient recollection" to determine which days they were not provided a meal or rest break. (Exhs. B1-B8, Responses 8 and 9) Plaintiffs admit in their opposition that they were provided meal breaks on all days from Monday through Friday. (Opp., p. 21) Despite their "cannot recall" answers in their interrogatories, Plaintiffs contend that their deposition testimony establishes they were not provided meal breaks. However, the testimony does not establish this. As with all other evidence submitted, the plaintiffs continued to be unable to specify any particular day or date upon which they were denied rest and/or meal breaks in their depositions. Rather, they reaffirmed their "cannot recall" answers from written discovery. This is not sufficient to defeat summary judgment.

Moreover, Plaintiffs fail to deny that ASL's employee handbook specifically states that employees are entitled to, and "must take" rest and meal as provided by law. (Lewis Decl., ¶5, Misle decl., ¶12 Exh. C) ASL in fact provided Plaintiffs with meal and rest breaks and never once told any Plaintiff (or any other employee) he or she could not take a meal or rest break. (Lewis decl., ¶5) Defendants are entitled to summary adjudication on the meal and rest break issue, or at a minimum, for each day for which Plaintiffs fail to validly introduce admissible evidence to raise a genuine issue of fact that he was not provided a break or rest period as provided by law.

## VI. Defendant Provided Accurate Time Cards To Plaintiffs From August 2007 and Thereafter, And They Are Not Required To Maintain The Lists Of Hours Worked From Collection Lists.

The Opposition challenges the payroll records submitted to the Court by claiming that the handwritten lists prepared by Lewis and others had to be produced. But there is no law

which requires this. Plaintiffs cite to case law supporting the proposition that if an employer failed to maintain accurate payroll records, the employee may meet his burden under the FLSA if he proves that he performed work for which he was improperly compensated and produces some evidence to show the amount and extent of that work. Citing to, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)  The payroll records reflect all of the time worked and for which the Plaintiffs were paid. The lack of written notes that were then transferred to written records through Prime Pay is not determinative of the issue and the cases cited by Plaintiffs do not hold that because written notes no longer exist, there has been a failure by the employer to keep accurate records. The records are in fact accurate. In order to shift the burden, the plaintiffs must prove that ASL did not keep proper records of wages and hours. *Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986) There is no such evidence. The only evidence before the Court is that hours were maintained via the hand scanning system and that if the employees did not scan on weekends, their hours were recorded and called into Prime Pay. This does not establish a failure to keep proper records. To the contrary, it establishes proper record keeping. The burden has and always will be on the plaintiffs to prove by competent evidence the actual days and hours which are unpaid and they have failed to do so.

## CONCLUSION

For the reasons stated above, and in the moving papers, Defendants are entitled to summary judgment, or partial summary judgment on each of the claim alleged in the SAC.

Dated:  January 10, 2011              MORGAN, FRANICH, FREDKIN & MARSH

*/s/ ELIZABETH M. PAPPY*

By:
        Attorneys for Defendants