**United States District Court**
For the Northern District of California

1                                                      ** E-filed February 8, 2011 **

2

3

4

5

6

7                              NOT FOR CITATION

8                  IN THE UNITED STATES DISTRICT COURT

9                FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                           SAN JOSE DIVISION

11    EDWIN MARTINEZ, et al.,                    No. C09-00997 HRL

12              Plaintiffs,                       **ORDER GRANTING IN PART AND
                                                  DENYING IN PART DEFENDANTS'
13         v.                                     MOTION FOR SUMMARY
                                                  JUDGMENT**
14    ANTIQUE & SALVAGE LIQUIDATORS,
      INC., et al.,                               **[Re: Docket No. 46]**
15
                Defendants.
16    _____/

17                              **BACKGROUND**

18         This is a wage-and-hour action between Edwin Martinez, Roger Lindolfo, Wilmer Ruiz,

19    Gabriel Franco, Oscar Rodriguez, and Amado Martinez (collectively, "Plaintiffs") and their former

20    employer Antique & Salvage Liquidators, Inc. ("ASL") and its owner Howard Misle ("Misle")

21    (collectively, "Defendants").[1]  Plaintiffs bring claims for violation of state and federal overtime law

22    under California Labor Code § 510 and the Fair Labor Standards Act, 29 U.S.C. § 207 (first and

23    second causes of action); failure to provide meal and rest periods in violation of California Labor

24    Code § 226.7 (third cause of action); failure to pay wages due and waiting time penalties in

25    violation of California Labor Code § 203 (fourth cause of action); violation of California Business

26    and Professions Code § 17200 (fifth cause of action); failure to provide proper pay statements in

27    _____

28    [1] Plaintiffs' claims against four other defendants were voluntarily dismissed by stipulation of the
      parties on January 20, 2011, after this motion was fully briefed.  Docket No. 64.  As such, none of
      the parties' arguments concerning these defendants will be discussed.

**United States District Court**
For the Northern District of California

1  violation of California Labor Code § 226 (sixth cause of action); and violation of the Private

2  Attorneys General Act ("PAGA"), California Labor Code § 2698 et seq. (seventh cause of action).

3  Docket No. 29 ("Second Amended Complaint" or "SAC").

4        Plaintiffs were hourly employees of defendant ASL, an electronic waste recycler in San Jose,

5  California.  ASL is a California corporation owned entirely by Big H Enterprises, Inc. ("Big H"),

6  also a California corporation.  Docket No. 49 ("Misle SJ Decl."), ¶ 2.  Big H., in turn, is wholly

7  owned by Misle.  At all relevant times, Misle served on ASL's board of directors and was its CEO.

8  Id.  Misle declares that his role consisted of establishing business policy decisions and making high-

9  level decisions.  Id., ¶ 3.  He says that generally he was not involved with ASL's day-to-day

10  operations and that he never had any involvement in the hiring, firing, hours, breaks, or

11  compensation of Plaintiffs.  Id.  Instead, all of ASL's employee issues were handled by ASL's

12  general manager Steve Hart ("Hart") and supervisory employees William McGeever ("McGeever")

13  and Dave Lewis ("Lewis").  Id.  Indeed, Misle says it was Lewis who had the power to hire and fire

14  employees who worked in Plaintiffs' positions, who determined their hours, and who paid their

15  compensation.  Id.

16        Prior to August 2007, Plaintiffs and other employees in their positions used a punch clock to

17  track their arrival and departure from the workplace.  Docket No. 47 ("Lewis SJ Decl."), ¶ 4.  These

18  time cards were maintained by Chris Oliverio.  Id.  Oliverio, in turn, calculated the time worked by

19  each Plaintiff and then relayed this information to Prime Pay, a payroll service company used by

20  ASL.  Id.

21        Beginning in August 2007, ASL implemented a new system for tracking employee hours.

22  Misle SJ Decl., ¶ 10.  This new system scanned the employees' hands when they arrived at and

23  departed the workplace.  Id.  This information was relayed directly to Prime Pay, which used this

24  data to calculate the working hours and compensation of ASL's employees, including Plaintiffs.  Id.

25        The parties both agree, however, that, in addition to its normal weekday activities, ASL also

26  sponsored offsite collection events during some weekends, and the hand-scan system was not used

27  to track employees' hours for these.  According to Lewis, when such events took place, either he or

28  the "lead" employee for each event "would manually take note of the hours spent by each Plaintiff

1    and have this information input" into the Prime Pay system.  Lewis SJ Decl., ¶ 4.  "The hours

2    worked by Plaintiffs and other employees [were] relayed to Prime Pay, which would prepare

3    compensation checks for each Plaintiff based on this information."  Id.

4         ASL went out of business on December 18, 2008.  Plaintiffs were laid off that same day and

5    their final paychecks were issued on December 19.  In their Second Amended Complaint, Plaintiffs

6    allege that they regularly worked more than 8 hours per day and more than 40 hours per week but

7    were not paid overtime wages, were not provided meal or rest breaks, and were not provided

8    accurate and complete pay statements.  In their interrogatory responses, though, each Plaintiff stated

9    that he could not recall or was without sufficient recollection to provide which dates they worked

10   more than 8 hours in a day or more than 40 hours in a week or when they were not provided meal or

11   rest breaks.  Docket No. 48 ("Pappy SJ Decl."), ¶ 2; Exs. B1-B8, Interrogatory Nos. 2-5, 8-9.

12        Defendants now move for summary judgment.  Specifically, Defendants move for summary

13   judgment in favor of Misle on all of Plaintiffs' claims.  Docket No. 46 ("SJ Motion").  Defendants

14   also move for summary judgment in favor of ASL as to Plaintiffs' first through sixth causes of

15   action insofar as the claims relate to events after August 2007 and as to Plaintiffs' PAGA claim.  Id.

16                                 **LEGAL STANDARD**

17        A motion for summary judgment should be granted if there is no genuine issue of material

18   fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c)(2));

19   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party bears the initial

20   burden of informing the court of the basis for the motion, and identifying portions of the pleadings,

21   depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a

22   triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In order to meet

23   its burden, "the moving party must either produce evidence negating an essential element of the

24   nonmoving party's claim or defense or show that the nonmoving party does not have enough

25   evidence of an essential element to carry its ultimate burden of persuasion at trial."  Nissan Fire &

26   Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

27        If the moving party meets its initial burden, the burden shifts to the non-moving party to

28   produce evidence supporting its claims or defenses.  See FED. R. CIV. P. 56(e)(2); Nissan Fire &

United States District Court
For the Northern District of California

3

1  Marine Ins. Co., Ltd., 210 F.3d at 1102.  The non-moving party may not rest upon mere allegations

2  or denials of the adverse party's evidence, but instead must produce admissible evidence that shows

3  there is a genuine issue of material fact for trial.  See id.  A genuine issue of fact is one that could

4  reasonably be resolved in favor of either party.  A dispute is "material" only if it could affect the

5  outcome of the suit under the governing law.  Anderson, 477 U.S. at 248-49.

6        "When the nonmoving party has the burden of proof at trial, the moving party need only

7  point out 'that there is an absence of evidence to support the nonmoving party's case.'"  Devereaux

8  v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).  Once the

9  moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials,

10  but must present evidence sufficient to demonstrate that there is a genuine issue for trial.  Id.

**DISCUSSION**

11

12  A.  Misle's Individual Liability

13        Defendants argue that Plaintiffs' claims against Misle in his individual capacity fail because

14  Misle is not an "employer" under either the FLSA or California law.

15        1.  FLSA Claim against Misle

16            i.  Whether Misle Is an "Employer" under the FLSA

17        Section 7 of the FLSA provides that an employee who works more than forty hours a week

18  must be paid at least one and one-half times his or her regular rate for those additional hours.  29

19  U.S.C § 207(a)(1).  However, only an "employer" is subject to this provision.  Id.

20        The FLSA defines an "employer" as "any person acting directly or indirectly in the interest

21  of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d).  This definition is not limited

22  by the common law concept of an "employer," but instead "'is to be given an expansive

23  interpretation in order to effectuate the FLSA's broad remedial purposes.'"  Boucher v. Shaw, 572

24  F.3d 1087, 1090-91 (9th Cir. 2009) (quoting Lambert v. Ackerley, 180 F.3d 997, 1011-12 (9th Cir.

25  1999) (en banc)).  Whether an employer-employee relationship exists depends upon "the

26  circumstances of the whole activity," particularly the "economic reality" of the relationship.  Id.

27  The economic reality test requires the court to examine whether the alleged employer: (1) had the

28  power to hire and fire the employee; (2) supervised and controlled employee work scheduled or

United States District Court
For the Northern District of California

4

United States District Court
For the Northern District of California

1    conditions of employment; (3) determined the rate and method of payment; and (4) maintained

2    employment records.  Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1470 (9th

3    Cir. 1983) (abrogated on other grounds by Garcia v. San Antonio Metro. Transit Authority, 469 U.S.

4    528, 539 (1985)).

5         As stated above, Misle's deposition testimony essentially is that he was only engaged in

6    high-level business policy decisions and was never involved in ASL's day-to-day affairs or in the

7    hiring, firing, hours, breaks, or compensation of Plaintiffs.  Misle SJ Decl., ¶ 3.  In their opposition,

8    however, Plaintiffs point to certain discovery that arguably suggests that Misle may have maintained

9    enough operational control of ASL to be considered an "employer" under the FSLA.  This discovery

10   indicates that Misle often was consulted about ASL's daily operations and he, at least on occasion,

11   may have had input into the amounts of payment for ASL's employees and into when ASL would

12   be wound-up and its employees — including Plaintiffs — would be terminated.  See Docket No. 55

13   ("Pedersen SJ Decl."), Ex. 9 (Transcript of Deposition of William McGeever) at 73:22-74:12,

14   78:14-17, 122:19-23; Ex. 10 (Transcript of Deposition of Steve Hart) at 28:8-13, 58:4-18, 61:8-11,

15   62:7-16, 113:2-8, 121:5-122:5.  In light of this discovery, the Court finds that Plaintiffs have

16   presented just enough evidence to demonstrate that a genuine issue of material fact exists on this

17   issue.  Accordingly, Defendants' motion will be denied as to Plaintiffs' FLSA claim against Misle.[2]

18   _____

19   [2] Although Defendants are correct that the cases cited by Plaintiffs involved individual employers
     who had more involvement that Misle appears to have had (such as signing the employees' checks,

20   interviewing and hiring or firing the employees, determining the employees' hours, etc.), the
     question is whether there is a genuine issue of material fact, not simply whether there are fewer

21   signs of his supervision or control here than in cases where others were found to be employers.  See,
     e.g., Herman v. RSR Security Servs. Ltd., 172 F.3d 132, 140 (2d Cir 1999) ("employer" hired

22   employees, on occasion supervised and controlled employee work schedules and conditions of
     employment, sometimes signed payroll checks, and ordered a stop to the illegal pay practice of

23   including security guards as independent contractors); Reich v. Circle C Investments, Inc., 998 F.2d
     324, 329 (5th Cir. 1993) (while "employer" did not control the day-to-day operations of the

24   company at issue, he exercised control over the work situation, was the driving force behind the
     company, hired employees, was identified by several employees as their supervisor, signed payroll

25   checks, and handled company money); Donovan v. Agnew, 712 F.2d 1509, 1514 (1st Cir. 1983)
     ("Taking an 'economic reality' approach to the facts of this case, we find that the district court did

26   not err in holding appellants personally liable for the unpaid wages of their 99 hourly employees.
     Our holding is narrow.  We review the liability of corporate officers with a significant ownership

27   interest who had operational control of significant aspects of the corporation's day to day functions,
     including compensation of employees, and who personally made decisions to continue operations

28   despite financial adversity during the period of nonpayment.  Under these circumstances, we agree
     with the district court's holding that appellants were employers within the meaning of the [National
     Labor Relations Act] chargeable with personal liability for failure to pay minimum and overtime

ii.  <u>Whether the Statute of Limitations Bars Plaintiffs' FLSA Claim as to Conduct Prior to February 11, 2008</u>

Defendants also contend that Misle is entitled to summary judgment as to Plaintiffs' FLSA claim for alleged violations prior to February 11, 2008 on statute of limitations grounds.  Under the FLSA, an action for overtime pay must be commenced "within two years after the cause of action accrued," unless the cause of action arises "out of a willful violation."  29 U.S.C. § 255(a).  In the case of a willful violation, the limitations period is extended to three years.  <u>Id</u>.; <u>see</u> <u>Dent v. Cox Communications Las Vegas, Inc.</u>, 502 F.3d 1141, 1144 (9th Cir. 2007) (citing <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 132-33 (1988)).  "A new cause of action accrues at each payday immediately following the work period for which compensation is owed."  <u>Dent</u>, 502 F.3d at 1144 (citing <u>O'Donnell v. Vencor Inc.</u>, 466 F.3d 1104, 1113 (9th Cir. 2006)).  "A violation of the FLSA is willful if the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'"  <u>Chao v. A-1 Med. Servs., Inc.</u>, 346 F.3d 908, 918 (9th Cir. 2003) (quoting <u>McLaughlin</u>, 486 U.S. at 133).  "If an employer acts unreasonably, but not recklessly, in determining its legal obligation" under the FLSA, its action is not willful.  <u>McLaughlin</u>, 486 U.S. at 135 n.13.

In their motion, Defendants correctly note that Plaintiffs have presented no evidence that Misle acted willfully.  Motion at 12.  In response, Plaintiffs explain that "[t]he FLSA violation in this case is two-fold: the hours shaved off the face of Plaintiffs' punch-card time records and hours which, per stated company policy[,] should have been paid, but were not."  Opp'n at 20.  They then contend that, "[a]ssuming that the Court find that Defendants or Defendants['] agents actually engaged in this activity, it would be clear that this practice could not have been conceived to properly compensate the Plaintiffs for overtime work under the FLSA."  <u>Id</u>. at 21.  "For this reason," they say that a genuine issue of material fact exists as to whether Misle acted willfully.  <u>Id</u>.

But again, as explained earlier, the non-moving party may not rest upon mere allegations, but instead must produce admissible evidence that shows there is a genuine issue of material fact for

_____

wages as required by the FLSA.") (citation omitted); <u>see also</u> <u>Cai v. Fishi Café, Inc.</u>, No. C-05-03175 EDL, 2007 WL 2781242, *5 (N.D. Cal. Sep. 20, 2007) ("employer" collected daily receipts, looked in on restaurant to make sure things were running smoothly, hired and terminated employees, and set pay for employees).

United States District Court
For the Northern District of California

trial.  Plaintiffs clearly have not produced any evidence whatsoever on this issue, and so they have not met their burden.  Thus, since Plaintiffs have failed to show that Misle acted willfully, the statute of limitations for their FLSA claim is two years.  Plaintiffs first brought their FLSA claim against Misle in their First Amended Complaint filed on February 11, 2010.  Docket No. 25.  This means that any claim based on conduct prior to February 11, 2008 is time barred.

2.   California Labor Code Claims against Misle

California Labor Code § 1194 provides a right to sue for unpaid minimum wages or overtime compensation.   According to the California Supreme Court, the legislature is presumed to have intended the IWC's wage orders to state who is liable for such claims, and under the IWC definition, "employ" means "to exercise control over the wages, hours or working conditions," "to suffer or permit to work," or "to engage, thereby creating a common law employment relationship."[3]  Martinez v. Combs, 49 Cal. 4th 35, 52, 63-64 (2010).

That said, it is clear that "corporate agents acting within the scope of their agency are not personally liable for the corporate employer's failure to pay its employees' wages."  Reynolds v. Bement, 36 Cal. 4th 1075, 1087-88 (2005); see also Martinez v. Combs, 49 Cal.4th 35, 66 (2010) ("The opinion in Reynolds . . . properly holds that the IWC's definition of 'employer' does not impose liability on individual corporate agents acting within the scope of their agency.").  Since the evidence presented shows that Misle was responsible for establishing business policy decisions and making high-level decisions and generally was not involved with ASL's day-to-day operations and never had any involvement in the hiring, firing, hours, breaks, or compensation of Plaintiffs (Misle SJ Decl., ¶ 3), Misle resembles the typical corporate agent who is not liable as an "employer" under California law, which is narrower than the federal definition.  Defendants' motion, then, will be granted in favor of Misle as to Plaintiffs' California Labor Code claims but it will be denied as to their claim for violation of California Business and Professions Code § 17200 because a violation of that section can be based upon an underlying violation of the FLSA.  See Cai v. Fishi Café, Inc., No.

---

[3] Note, however, that the IWC definition is broader than the common law definition.  Martinez v. Combs, 49 Cal. 4th 35, 63-66 (2010) (abrogating Reynolds v. Bement, 36 Cal. 4th 1075, 1087 (2005)).

United States District Court
For the Northern District of California

1    C-05-03175 EDL, 2007 WL 2781242, at *6 (N.D. Cal. Sep. 20, 2007); Harris v. Investor's Business

2    Daily, Inc., 138 Cal.App.4th 28, 32-33 (2006).

3           B.   ASL's Liability

4                1.   Plaintiffs' Claims Based on Post-August 2007 Conduct

5           As stated earlier, in August 2007, ASL implemented a new system for tracking employee

6    hours that scanned the employees' hands when they arrived at and departed the workplace.  Misle SJ

7    Decl., ¶ 10.  This information was relayed directly to Prime Pay, who used this data to calculate the

8    working hours and compensation of ASL's employees, including Plaintiffs.  Id.  Defendants thus

9    move for summary judgment as to Plaintiffs' claims against ASL based on conduct occurring after

10   the implementation of the hand-scanning system.

11          To meet their initial burden, Defendants submitted the time records for Plaintiffs beginning

12   in August 2007 and pointed out that each Plaintiff stated in their interrogatory responses that he

13   could not recall or was without sufficient recollection to provide which dates they worked more than

14   8 hours in a day or more than 40 hours in a week.  Lewis SJ Decl., ¶ 4; Ex. A; Pappy SJ Decl., ¶ 2;

15   Exs. B1-B8, Interrogatory Nos. 2-5, 8-9.  Defendants also noted that ASL employee Dave Lewis

16   stated in his declaration that, prior to this lawsuit, Plaintiffs never complained that the information

17   on the time records was incorrect or that they did not receive the correct amount of compensation

18   (and whenever an error was reported, it was immediately corrected).  Lewis SJ Decl., ¶ 4.

19          In their opposition, Plaintiffs concede that they "do not take issue with [the] accuracy of

20   [the] records generated by the hand-scan system Monday through Friday, when workers actually

21   punched in-and-out using the machine."  Opp'n at 14.  Instead, Plaintiffs challenge the accuracy of

22   their hours worked on weekends, when the hand-scan system was not used.  Id.

23          In support of their inaccurate weekend hours argument, Plaintiffs point to some weekend

24   events whereby they contend that there is a discrepancy between the hours for which Plaintiffs were

25   paid for and the hours the event should have taken (inclusive of set-up and travel time).  Opp'n at 6-

26   7.  For example, they describe a weekend event that purportedly took place in San Francisco on

27   August 16, 2008 that began at 9:00 a.m. and ended at 4:00 p.m.  Opp'n at 6-7 (citing Pedersen

28   Decl., Ex. 1 (ASL Collection Event Calendar listing events scheduled in August and September

United States District Court
For the Northern District of California

8

United States District Court
For the Northern District of California

2008)).  They also point out that ASL employee William McGeever stated during his deposition that unloading the trucks prior to such an event "probably takes an hour or thereabouts" (although he also stated that the time "depends on the job site") and that ASL employee Dave Lewis stated that he thought that ASL paid employees for travel time if the site was more than 25 miles from ASL's location.  Opp'n at 5-6 (citing McGeever SJ Decl. at 98; Lewis SJ Decl. at 86).

According to the payroll records, three Plaintiffs were paid for the hours 8:30 a.m. to 5:00 p.m.; 8:30 a.m. to 4:00 p.m.; and 8:30 a.m. to 4:00 p.m., respectively, for work on August 16, 2008. Pedersen Decl., Ex. 2.  Since San Francisco is more than 25 from San Jose, Plaintiffs contend that these Plaintiffs were only paid for one-half hour of set-up time and were not paid for travel time. Opp'n at 7, 15.

While Defendants present credible arguments in response, the Court believes that Plaintiffs have sufficiently demonstrated the existence of a genuine issue of material fact as to whether Plaintiffs were accurately paid during weekend events.  Accordingly, the Court will grant Defendants' motion as to Plaintiffs' claims based on their weekday hours after the implementation of the hand-scan system, but will deny Defendants' motion as to Plaintiffs' claims based on their weekend hours for the same time period.

2.  Plaintiffs' PAGA Claim

Roughly ten months after being laid off, Plaintiffs submitted a written notice to the California Labor and Workforce Development Agency ("LWDA") and to ASL on October 14, 2009 alleging various violations of California wage and hour laws. SAC, ¶ 64.  The LWDA responded 55 days later on December 8, 2010 that it would not be pursuing an investigation.  SAC, ¶ 65.

Pursuant to the parties' stipulation and with leave of the court, on February 11, 2010, Plaintiffs filed their First Amended Complaint, adding new defendants and adding for the first time a cause of action under PAGA for "civil penalties" based on predicate violations of Labor Code §§ 510 and 558.  After filing their First Amended Complaint, Plaintiffs realized that their PAGA claim did not include all of the underlying wage and hour violations that had been alleged in their written notice to the LWDA.  So, on March 29, 2010, again pursuant to the parties' stipulation and with

9

United States District Court
For the Northern District of California

1    leave of the court, Plaintiffs filed their Second Amended Complaint, amending their PAGA claim to

2    include additional predicate Labor Code violations.

3                    i.    PAGA Has a One-Year Statute of Limitations

4            Employers are subject to liability for wage-and-hour violations through several avenues

5    under the California Labor Code.  As one court in this District previously described:

> An individual may bring a private action for unpaid wages and statutory penalties
> under certain Labor Code provisions.  See, e.g., Cal. Lab. Code §§ 201 (wages upon
> discharge), 203 (statutory penalties for failure to pay wages upon discharge), 226.7
> (mandated meal or rest periods).  See also Caliber Bodyworks, Inc. v. Superior Court,
> 134 Cal.App.4th 365, 377-78, 380 n.16, 36 Cal.Rptr.3d 31 (2005) (explaining that an
> individual may bring a private action for unpaid wages or statutory penalties under
> these provisions).  In addition, the State's labor law enforcement agencies — the
> LWDA and its departments and divisions — are authorized to assess and collect civil
> penalties for specified provisions of the Labor Code.  See, e.g., Cal. Lab. Code § 210
> (authorizing recovery of civil penalties for unpaid wages).  See also Caliber
> Bodyworks, Inc. v. Superior Court, 134 Cal.App.4th at 370, 36 Cal.Rptr.3d 31
> (explaining that the LWDA is authorized to assess and collect civil penalties under
> specified Labor Code provisions).  Finally, PAGA, effective January 1, 2004, permits
> individuals to bring private actions against an employer for civil penalties under
> specified sections of the Labor Code.  See Cal. Lab. Code § 2699(a).  See also Caliber
> Bodyworks, Inc. v. Superior Court, 134 Cal.App.4th at 374-75, 36 Cal.Rptr.3d 31
> (explaining that PAGA allows private actions for civil penalties).  "In sum, an
> employer is potentially liable for unpaid wages and interest, statutory penalties and
> civil penalties for many violations of Labor Code wage-and-hour provisions."
> Caliber Bodyworks, Inc. v. Superior Court, 134 Cal.App.4th at 378, 36 Cal.Rptr.3d
> 31.

17   Thomas v. Home Depot USA, Inc., 527 F.Supp.2d 1003, 1006-07 (N.D. Cal. 2007).

18          The California Code of Civil Procedure ("CCP") provides for a one-year statute of

19   limitations for an action upon a statute for a penalty or forfeiture, but provides for a three-year

20   statute of limitations for an action upon a liability created by statute, other than a penalty or

21   forfeiture.  See CCP §§ 338(a) & 340(a).  Many courts, including this one, have previously made

22   clear that the civil penalties recoverable under PAGA are "penalties" within the meaning of CCP §

23   340(a).  See Baas v. Dollar Tree Stores, No. C07-03108, 2009 WL 1765759, at *5 (N.D. Cal. Jun.

24   18, 2009) (stating that a PAGA claim is subject to a one-year statute of limitations); Thomas v.

25   Home Depot USA, Inc., 527 F.Supp.2d at 1006 (holding the same); Moreno v. Autozone, Inc., No.

26   C05-04432, 2007 WL 1650942, at *2-4 (concluding that § 340(a) applies to PAGA claims);

27   DeSimas v. Big Lots Stores, Inc., No. C06-6614, 2007 WL 686638, at *3-4 (N.D. Cal. Mar. 2,

28   2007); Caliber Bodyworks, Inc. v. Superior Court, 134 Cal.App.4th at 374-76.

**United States District Court**
For the Northern District of California

1    Plaintiffs contend that courts should look to the whether the underlying labor code provision

2  provides for a penalty or for damages to determine the appropriate statute of limitations.  However,

3  this "penalty-versus-compensatory analysis" urged by Plaintiffs is inappropriate in the context of a

4  PAGA claim because, as explained above, PAGA allows aggrieved individuals to recover "civil

5  penalties" for violations of underlying Labor Code provisions.  While the provisions underlying a

6  PAGA claim may provide for either wages or penalties, numerous courts have already made clear

7  that a PAGA claim itself is for a penalty.  See Thomas v. Home Depot USA, Inc., 527 F.Supp.2d at

8  1008.[4]  As such, a one-year statute of limitations period clearly applies to Plaintiffs' PAGA claim.

9                              ii.    Plaintiffs' PAGA Claim Is Not Time-Barred

10    As discussed above, PAGA allows employees to bring private actions against their

11  employers for civil penalties under specified sections of the Labor Code.  See Cal. Lab. Code §

12  2699(a); Caliber Bodyworks, Inc. v. Superior Court, 134 Cal.App.4th at 374-75.  But before an

13  employee may do so, the procedures set forth in Labor Code § 2699.3 must be followed.  See Cal.

14  Lab. Code § 2699(a).  Under § 2699.3, the applicable procedure depends upon which predicate

15  Labor Code violations are claimed.  See Cal. Lab. Code § 2699.3(a), (b) & (c).  In the instant case,

16  the predicate violations claimed by Plaintiffs would fall under the procedures set forth in Labor

17  Code § 2699.3(a) (for predicate violations of any of the Labor Code provisions listed in Labor Code

18  § 2699.5) or Labor Code § 2699.3(c) (for predicate violations of Labor Code other than those listed

19  in Labor Code § 2699.5 or Division 5 of the Labor Code).  Under either, the aggrieved employee

20  must give written notice by certified mail to the LWDA and the employer of the alleged violations.

21  Cal. Lab. Code §§ 2699.3(a)(1) & (c)(1).  Then, under Labor Code § 2699.3(a), the LWDA shall

22  notify the employer and the employee within 30 calendar days if it intends to investigate the

23  allegations itself.  Cal. Lab. Code § 2699.3(a)(2)(A).  Upon receipt of this non-investigation notice

24  or if no such notice is provided within 33 calendar days, the employee may commence a civil action

25  _____

26  [4] Thomas v. Home Depot USA, Inc. is instructive.  In that case, the plaintiff argued that the
operative statute of limitations for PAGA claims is that of the underlying claim.  Thomas v. Home
27  Depot USA, Inc., 527 F.Supp.2d at 1007.  Noting that some of the potential predicate violations
provided for wages (e.g., Labor Code § 226.7) while others called for penalties (e.g., Labor Code §
28  [225.5]), the court explained that "a PAGA claim is, by definition, a claim for civil penalties."  Id. at
1008.

United States District Court
For the Northern District of California

1   for a claim under PAGA.  Cal. Lab. Code § 2699.3(a)(2)(A).  Similarly, under Labor Code §

2   2699.3(c), the employer has the opportunity to cure the alleged violation, but if the employer does

3   not do so within 33 calendar days, the employee may at that point commence a civil action for a

4   claim under PAGA.  Cal. Lab. Code § 2699.3(c)(2)(A).

5        PAGA allows for a tolling of the limitations period during the (at most) 33-day period during

6   which the LWDA is assessing, or the employer may be curing, the alleged violations.  Cal. Labor

7   Code § 2699.3(d); see Singer v. Becton, Dickinson And Company, No. C08-00821, 2008 WL

8   2899825, at *6 (S.D. Cal. July 25, 2008); Moreno v. Autozone, Inc., 2007 U.S. Dist. LEXIS 43873,

9   at *5.

10       In addition, PAGA also contains a provision that allows a plaintiff to amend an existing

11   complaint to add a PAGA cause of action within 60 days of the tolling period, at least with respect

12   to predicate violations of provisions listed in § 2699.5.[5]   See Cal. Lab. Code § 2699.3(a)(2)(C).  A

13   plaintiff has this ability "[n]otwithstanding any other provision of law," meaning that a plaintiff can

14   make such an amendment even if it occurs outside of the 1-year limitations period for penalties.  Id.

15       Here, pursuant to Labor Code § 2699(a) and (c), Plaintiffs' provided written notice to the

16   LWDA and ASL on October 14, 2009.  SAC, ¶ 64.  Plaintiffs did not receive a non-investigation

17   notice from the LWDA until 55 days later on December 8, 2009, and ASL did not cure the alleged

18   violations within the 33-day period that ended on November 17, 2009.  SAC, ¶¶ 65 & 66.  Thus,

19   based on the one-year statute of limitations period and the procedures outlined in § 2699.3(a) and

20   (c), Plaintiffs could have filed their PAGA claim one year and 33 days after the violations occurred.

21   Since Plaintiffs were terminated on December 18, 2008, this means that Plaintiffs had until January

22   20, 2010 to do so, but they could still amend an existing complaint to add a PAGA claim within 60

23   days after that — or by March 21, 2010.

24       Plaintiffs filed their original complaint — which lacked a PAGA claim — on March 6, 2009.

25   They first alleged a PAGA claim in their First Amended Complaint filed on February 11, 2010,

26   which was after the one-year and 33 days limitations period but within the 60-day window thereafter

27   _____

28   [5] Labor Code § 2699.3(a)(2)(C) provides in full: "Notwithstanding any other provision of law, a
plaintiff may as a matter of right amend an existing complaint to add a cause of action arising under
this part at any time within 60 days of the time periods specified in this part."

1   in which Plaintiffs could amend their existing complaint as a matter of right under Labor Code §

2   2699.3(a)(2)(C).

3        Plaintiffs did not add the additional predicate violations to their PAGA claim until they filed

4   their Second Amended Complaint on March 29, 2010 — <u>after</u> the 60-day window in which to

5   amend an existing complaint.  In such a case, Plaintiffs' Second Amended Complaint adding

6   additional predicate violations would have to "relate back" to their original complaint.

7        Defendants cite cases containing solid and persuasive analyses of the relation back doctrine

8   in the context of PAGA claims, but they are distinguishable because they are limited to instances

9   where the required notices to the LWDA and employer were provided after the statute of limitations

10  had already run.  <u>See</u> <u>Harris v. Vector Marketing Corp.</u>, No. C08-05198, 2010 WL 56179, at *3

11  (agreeing with the "[t]wo courts in this District [which] have rejected a relation back argument,

12  where, as here, the notice to the LWDA was not made until after the expiration of the limitations

13  period.").  Because the LWDA notice is a condition precedent to suit, this notice must be given prior

14  to the running of the statute of limitations.  <u>Id.</u>; <u>see also</u> <u>Baas v. Dollar Tree Stores, Inc.</u>, No. C07-

15  03108, 2009 WL 1765759, at *5; <u>Moreno</u>, No. C05-04432, 2007 WL 1650942, at *14.

16       Plaintiffs' situation is different.  Plaintiffs timely provided notice to the LWDA and ASL on

17  October 14, 2009.  SAC, ¶64.  Plaintiffs' situation is more similar to <u>Waisbein v. UBS, Financial</u>

18  <u>Services, Inc.</u>, No. C07-02328, 2008 WL 753896 (N.D. Cal. Mar. 19, 2008), a case where the court

19  allowed a plaintiff's PAGA claim to relate back to an earlier, timely-filed complaint when he had

20  given notice to the LWDA before the limitations period had run.  That court explained: "California

21  courts have held, under analogous circumstances, that an exhausted claim, although alleged in an

22  amended complaint filed after the expiration of the statute of limitations, relates back to a prior

23  timely-filed complaint based on the 'same set of facts.'"  <u>Waisbein</u>, 2008 WL 753896, at *1 (citing

24  <u>State v. Bodde</u>, 32 Cal.4th 1234, 1244 (2004); <u>Goldman v. Wilset Foods, Inc.</u>, 216 Cal.App.3d

25  1085, 1094 (1989); <u>Bahten v. County of Merced</u>, 59 Cal.App.3d 101, 113-15 (1976); FED. R. CIV. P.

26  15(c)(1)(A)).

27       Plaintiffs' PAGA claim in their Second Amended Complaint alleges the "same set of facts"

28  as alleged in both their original complaint and in their First Amended Complaint.  The PAGA claim

**United States District Court**
For the Northern District of California

1   is based on the same alleged failures to pay overtime, allow requires meal periods, and provide

2   accurate pay statements.  As such, Plaintiffs' PAGA claim may relate back to Plaintiff's earlier

3   complaint, and Defendants' motion for summary judgment will be denied on this ground.

4                                               **CONCLUSION**

5         Based on the foregoing, Defendants' motion for summary judgment is GRANTED IN PART

6   and DENIED IN PART.  Specifically:

7   A.  <u>as to Misle</u>:

8         1.  summary judgment is granted as to Plaintiffs' first, third, fourth, sixth, and seventh

9              causes of action against Misle since Misle is not an "employer" under California law;

10        2.  summary judgment is granted as to Plaintiffs' second and fifth causes of action against

11             Misle insofar as Plaintiffs' claims are based upon conduct occurring before February 11,

12             2008;

13        3.  summary judgment is denied as to Plaintiffs' second and fifth causes of action against

14             Misle insofar as they are based upon conduct occurring on or after February 11, 2008;

15  B.  <u>as to ASL</u>:

16        1.  summary judgment is granted as to all of Plaintiffs' claims insofar as they are based on

17             Plaintiffs' weekday hours after ASL implemented the hand-scan system; and

18        2.  summary judgment is denied as to all of Plaintiffs' claims insofar as Plaintiffs' claims

19             are based upon Plaintiffs' weekend hours after ASL implemented the hand-scan system

20             or upon Plaintiffs' hours (whether weekday or weekend) before ASL implemented the

21             hand-scan system.

22        **IT IS SO ORDERED.**

23  Dated: February 8, 2011

24        _____
          HOWARD R. LLOYD
          UNITED STATES MAGISTRATE JUDGE

25

26

27

28

                                                    14

1

**C09-00997 HRL Notice will be electronically mailed to:**

2

Adam Wang                    adamqwang@gmail.com, alpedersen@gmail.com,
                             rosilenda@gmail.com

3

Adam Lee Pedersen            alpedersen@gmail.com

Donn Waslif                  dwaslif@mffmlaw.com, dolson@mffmlaw.com,
                             gbirkheimer@mffmlaw.com

4

Elizabeth Marie Pappy        epappy@mffmlaw.com, cmacias@mffmlaw.com

5

Mark B. Fredkin              mfredkin@mffmlaw.com, crogers@mffmlaw.com,
                             dolson@mffmlaw.com, dwaslif@mffmlaw.com,

6

                             gdent@mffmlaw.com, jlira@mffmlaw.com, mramos@mffmlaw.com,
                             wsiamas@mffmlaw.com

7

**Counsel are responsible for distributing copies of this document to co-counsel who have not**

8

**registered for e-filing under the court's CM/ECF program.**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California